UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

**In re:**

| | |
|---|---|
| **Taylor M. Francois Bodine** | Case No. 21-11238-KHK |
| **Debtor** | Ch. 7 |

**OPPOSITON TO US TRUSTEE MOTION FOR 2004 EXAMINATION OF DEBTOR**

Comes now, the debtor, by counsel, and responds as follows to the motion for 2004 examination filed by the Office of US Trustee:

Federal Rule of Bankruptcy Procedure 2004 and the case of *In re Art & Architecture Books of 21st Century (Bankr. C.D. Cal. 2019)*:

On motion of any party in interest, the court may order the examination of any entity pursuant to Rule 2004(a). "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing and quoting, Cameron v. United States, 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914) (discussing former § 21(a) of the Bankruptcy Act, from which former Bankruptcy Rule 205 and current Rule 2004 are in part derived)). "

Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'" In re Duratech Industries, Inc., 241 B.R. 283, 289 (E.D.N.Y. 1999) (quoting In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983)); see also In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (comparing a Rule 2004 examination to a "fishing expedition").

"The scope of a Rule 2004 examination is exceptionally broad and the rule itself is 'peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does.'" In re Duratech Industries, Inc., 241 B.R. at 289 (quoting In

re GHR Energy Corp., 33 B.R. at 454). "There are, however, **limits to the sco**pe of Rule 2004 examinations.

Significantly, Rule 2004 examinations may not be used for the purposes of abuse or harassment." In re Duratech Industries, Inc., 241 B.R. at 283 (citing In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)). A Rule 2004 examination must be both "relevant and reasonable" and "may not be used to annoy, embarrass or oppress the party being examined." In re Symington, 209 B.R. 678, 685 (Bankr. D.Md.1997) (citations omitted).

"In evaluating a request to conduct a Rule 2004 examination, the court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.'" In re SunEdison, Inc., 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (quoting In re Drexel Burnham Lambert Group, Inc., 123 B.R. at 712).

Moreover, "[Rule] 2004 is not a substitute for discovery authorized in either adversary proceedings or contested matters which is governed by [Rule] 9014 [relating to contested matters]." In re Dinubilo, 177 B.R. 932, 942 (E.D.Cal.1993) (citation omitted). This limitation of Rule 2004 by distinction with Rule 9014 is often referred to as the "pending proceeding" rule.

If an adversary proceeding or a contested matter is pending and related to the dispute at issue, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Federal Rule of Bankruptcy Procedure 2004 and should utilize the discovery devices provided for in Federal Rules of Bankruptcy Procedure 7026 through 7037. In re National Assessment, Inc., 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016). Courts, however, will allow a party to utilize a Rule 2004 examination when the matter is not related to the pending adversary litigation. In re International Fibercom, Inc., 283 B.R. 290, 292-293 (Bankr. D. Ariz. 2002) (citations omitted).

Those courts allowing Rule 2004 examinations in pending litigation attempt to balance the expansive nature of a Rule 2004 examination, which offers limited protection to the examinee, with the more protected discovery process of the federal discovery rules. See e.g., In re M4 Enterprises, Inc., 190 B.R. 471, 475

(Bankr. N.D. Ga. 1995). The court "holds the ultimate discretion whether to permit" or deny the use of Rule 2004, and the determination is best left on a case by case basis. In re International Fibercom, Inc., 283 at 292-293.

**Scrutiny of Pre-Litigation Discovery**. *In re Kearney, 590 B.R. 913 (Bankr. N.M. 2018)*

As mentioned above, Rule 2004 can be legitimately used as a pre-litigation discovery device. However, because nowhere else in the rules of federal or state civil procedure are parties allowed to go on pre-litigation "fishing expeditions," bankruptcy courts should be careful to balance the estate's right to pre-litigation discovery with the target's right to be protected against improper, unwarranted, or unduly burdensome discovery.

The requirement for "good cause" and the case of *In re AOG Entm't, Inc., 558 B.R. 98 (Bankr. S.D.N.Y. 2016)*

A party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination " 'is necessary to establish the claim of the party seeking the examination, or ... denial of such request would cause the examiner undue hardship or injustice.' " In re Metiom, Inc. , 318 B.R. 263, 268 (S.D.N.Y.2004) (quoting In re Dinubilo , 177 B.R. 932, 943 (E.D.Cal.1993) ); accord In re Drexel Burnham Lambert Grp., Inc. , 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). In evaluating a request to conduct a Rule 2004 examination, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.

- Turning to the facts of this case, while the discovery sought by the Office of United State Trustee (OUST) may be relevant to their examination of debtor, it is certainly not reasonable.
- It is not reasonable to wait until the very last day of the deadline for the OUST to file a complaint of non-dischargeability against debtor and to seek an extension of time from the court at that time. It is not reasonable to wait about another week or so thereafter in order to file a 2004 motion. Mind you, as of the filing of the OUST 2004 motion and the debtor's

- opposition to said motion the court has yet to even rule that the OUST's motion seeking extension of time to file an adversary proceeding against has been granted. The OUST is proceeding on the assumption that its motion for extension of time will be granted. It would otherwise make more sense for the court to at least grant the OUST its extension to file a complaint against debtor before burdening debtor with a 2004 motion.
- The 2004 motion is further unreasonable in that the OUST has "fallen asleep at the wheel" and has does nothing in this case to help itself understand if there is any reason to suspect the debtor of any such action, lie, or omission that would bar her from receiving a discharge. For instance, the OUST did not appear and question the debtor at the 341; the OUST did not follow with counsel and request additional documents through counsel after the 341, which is often does when the actions of the debtor suspicion. In other words, for the first 100 days or so of this case the OUST was absolutely no where to be found.
- The OUST is being disingenuous when it asserts in paragraph 6 of its motion that "information received…..leads him to believe….in a course of conduct such that her discharge should be denied." Rather, the only reason that debtor appeared on the OUST "radar" is because two other creditors have file a complaint seeking to have their own debts barred from discharge.
- The 2004 examination is not necessary for the OUST to establish its claim and nor would the denial cause it undue hardship. The OUST will have front row seats to the pending complaints filed by two of the largest creditors in this case. They will be privy to the discovery that will take place in those case. As such, it need not duplicate its work.
- Finally, the motion is burdensome to the debtor if for no other reason in that, with the exception of a sizable amount of non-dischargeable student loan debt, and with the exception of the two pending complaints filed by creditors against debtor there is virtually no other debt left. In short, going after the debtor's discharge in this case is overkill.

WHEREFORE, the debtor prays that the motion filed by the Office of US Trustee be denied.

Respectfully submitted,

/s/Robert S. Brandt
Robert S. Brandt,
VSB # 46196
The Law Office of Robert S. Brandt
600 Cameron Street
Alexandria, VA 22314
703-342-7330
brandt@brandtlawfirm.com
Counsel for Debtor

CERTIFICATE OF SERVICE

This is to certify that on this 29th day of October, 2021 I caused to be served the foregoing Opposition to Motion for 2004 examination by CM/ECF.

/s/Robert S. Brandt